## Case No. 4,896.

FOGERTY v. PRATT et al.

[2 Hall, Law J. 238.]

District Court, D. Pennsylvania. Jan. 6, 1809.

Mr. Peters, Jr., for complainant.
J. Ingersoll, for respondents.

PETERS, District Judge. At Norfolk in Virginia, the ship was discharging stone ballast. A flat bottomed scow was used as a lighter to convey the ballast to the strand. The ballast was thrown into the scow from buckets, in which it had been hoisted out of the hold. These were borne to and off the side of the ship; both mates, at times,

assisting. They were discharged into the scow lying alongside at random, and their contents left to find their own position in the scow, or part to fall into the sea, as chance directed. No pains or care were taken to trim the scow, which had a considerable list towards the ship's side, and was so left, with about six inches free-board, when the mate, second mate and all hands went to dinner. After their meal, they proceeded to discharge the ballast in the mode which had been previously pursued. Three buckets being (after dinner) emptied into the scow, she began to take in water; and not till then did the mate (who commanded in the captain's absence) direct measures to be taken for trimming the ballast in the scow, though a hand might have been spared for that purpose from the commencement of her lading. She went down and was lost soon after the discharge of the third bucket. The mate's idea was that the scow, before any danger occurred, could be turned round so that the off side might receive more ballast, and settle her on an even bottom. He viewed from time to time her situation; and so did the second mate, and most, if not all, of the crew, though generally engaged at the tackle fall. No apprehension of danger was expressed on going to dinner, or at any other time, by any person. The second mate and some of the crew who were witnesses (under releases, from claim of contribution) now declare, that the scow was injudiciously laden, and that a hand should have been kept in her constantly to trim the ballast. Being asked why they did not remonstrate at the time against the mode taken to lade the scow, they replied, that "the mate was in command; and they had no right to interfere; especially as he had high notions of his authority." He appeared to have been a strict, and therefore not a favorite, officer.

The respondents set up a claim to the value of the scow lost, against the mate solely. The complainant's counsel contended that it was either a loss by unavoidable accident, for which neither the mate nor crew were responsible; or, if gross negligence appeared, or misfeasance, there should be a general contribution. It was difficult to determine whether the mate was solely amenable and in fault; though I had no doubt as to the injudicious mode of lading the scow, which should have been more carefully attended to, as it was the first attempt to load this lighter. If the second mate or any of the crew had deemed (as the former said he had) this mode of lading the ballast uncommon, or dangerous, it was their duty to have represented the matter to the mate. If they had so done, and he had persisted, it would indubitably have been at his sole risk. By not thus representing or protesting against it they took their share of risk and responsibility. It is a mistaken notion among mariners (many

of whom are disobedient enough in plain cases) that they are compelled unconditionally to obey all orders. This is not seldom, an affectation of strict duty; and they obey orders evidently wrong, or perceive in silence ruinous omissions when the consequences are exposures of officers they dislike. But this is a nice and dangerous game. If a casualty producing loss occurs, they share in the retribution; notwithstanding such insidious obedience, and hypocritical delicacy. They are bound by a superior duty, to guard the property of the owner. The law thus reconciles obedience with justice, by making it their duty to remonstrate and warn on proper occasions, before they obey, under the penalty of sharing the consequences. But if they give due warning and information they are free from participation in retribution for loss. Thus it has often been decided here,[1] in cases of bad stowage, bad ropes, or other defective tackle and furniture. Their remonstrances are not to be considered as impertinent interferences, but just and warrantable exercises of their rights and duty.

In the case in question, no warning or opinion was given; and the whole were thus inculpated. An officer may err in judgment, without perceiving the consequences. It is the interest as well as the duty of those who must respond with him to the owners, at least to endeavor to set him right. If he persists in error, it is solely at his own peril. There have been cases of exception to this rule, attended with special circumstances. If, in this case, the lighter had been (as was alleged but not proved) rotten and incompetent, the owner or his agent must have suffered the loss. The officers and crew would not have been liable to contribution, unless they, or some of them, knew the circumstance, and failed to warn or remonstrate to the master, or mate, who in such cases, may be ignorant of the deficiency. The general contribution is first regarded. Strong circumstances must exist to charge an individual; and those of this case do not seem to be so strongly marked as to warrant an exception. At least, doubted whether the proof amounted to error in judgment or crassa negligentia. But being clearly of opinion that there had been misfeasance; and no warning or protest. I deem it right to retribute the owner by general contribution. This must be made in the ratio of wages. The master and the whole of the ship's equipage, must contribute. Where the fault is not clearly fixed on an individual, the obligation of the whole to retribute the owner predominates;

[1] See Wilson v. The Belvidere [Case No. 17,-790], for the general duties of mates; Crammer v. The Fair American [Id. 3,347], as to claims of exceptions from contribution; Mariners v. The Kensington [Id. 9,085]; and Wilson v. The Belvidere [supra], as to the duty of seamen to remonstrate.

and prevails against any allegation of innocence, as to any one or more of the officers or crew. This may bear hard on the faultless; but it is the policy of the maritime law, thus to compel the innocent to watch, and bring to retribution or punishment, those who are really chargeable with negligence, delinquency or crime. This obligation arises out of a peculiar necessity, appropriate to those of this occupation, who, from the nature of their employment, are thus made sponsors for each other.